Francis Shiroma, Appellant, v. Roy M. Itano and Helen S. Itano, Appellees.

**Gen. No. 46,807.**

First District, Second Division.
May 29, 1956.
Released for publication June 19, 1956.

Sidney S. Altman, of Chicago, for appellant.

Crowe, Yates, Abrahamson & Fisk, of Chicago, for appellees; Burt A. Crowe, of Chicago, of counsel.

JUDGE ROBSON delivered the opinion of the court.

This is an appeal from a judgment entered upon directed verdict for defendants after both parties had rested. Neither defendants' request for a directed verdict nor the peremptory instruction of the court indicate in what particular plaintiff failed to prove his cause of action. Plaintiff contends that the evidence established a prima facie case in his favor and that the issues of negligence and contributory negligence were questions of fact for the jury. These are the two questions we must decide.

Viewing the evidence in its aspects most favorable to the plaintiff, the record reveals that defendants own a multiple dwelling of more than two stories, containing apartments and rooms occupied by tenants. Defendants lived in the first floor apartment and Jack Isota, a tenant, and his wife lived on the second floor, at the head of the front stairway. Opposite the Isotas' kitchen door, on the wall of the hallway, was an electric light containing a ten-watt bulb. The hall or corridor was about three and one-half feet wide. At the far end, about twenty feet from the light, was an L-shaped turn. At the end of the hall was a door that led to a common stairway which the tenants of the second and third floors descended in order to get out through the back entrance. Next to the stairway door, located in the turn of the hallway, was a door leading to a bedroom where the mother of one of the landlords lived. At a right angle to these doors, and at the end of the short turn in the hallway, was a door leading to a bathroom. There was no sign on any of these three doors and no light over the door leading to the stairway. The doors were similar in appearance.

The plaintiff entered these premises "on the invitation of Mr. Isota," a tenant, who told the plaintiff and others "to get together and have a game of cards." The plaintiff had been to the building once before, but

■■■■■■■■

never had visited the rear stairway or the toilet on the second floor. After the guests arrived at the Isota apartment they "sat around . . . and talked for a little while and . . . then decided to have a small game." All of the witnesses testified that they played poker, and one stated they were playing a twenty-five-cent limit.

About four hours after the start of the game, and while the game was still in progress, at 1:30 a. m., plaintiff asked his host, the tenant Isota, where the toilet was. Mr. Isota told him it was down at the end of the hall. He went down the hall toward the three doors. He opened the first one. It was dark, but he could see the threshold. He looked up and saw a dim reflection of the wall in front of him. He took a step a little past the threshold where he felt the floor. He could see the floor very dimly. He started to feel for the light switch on the side of the wall, but didn't find it. Thinking there might be a light cord he turned the other way and looked for it on the other side. As he was doing that he took another step forward and fell down the stairs, sustaining injuries that are the subject matter of this lawsuit.

■ ■ The first question for our determination is whether or not the issue of defendants' negligence should have gone to the jury. A landlord owes the guests of his tenant the duty of exercising reasonable care to keep those portions of the premises which are under his control, or used in common by the tenants, in a reasonably safe condition. Clerken v. Cohen, 315 Ill. App. 222. A question of fact as to the negligence of a landlord is unquestionably raised where it is alleged that he maintained an unlighted common stairway, and that the door leading to the stairway was unlighted and without sign or warning of any kind to an invitee of a tenant. Forden v. Copilove, 349 Ill. App. 162. In this case, however, defendants argue that

431

the question of duty, and not that of reasonable care, is controlling. Defendants contend that before negligence can be actionable, it must be established that the negligent party owed a duty of care to the injured party, and that defendants owed no duty of care to plaintiff because he was engaged in an unlawful enterprise on the premises, to wit, playing poker for money.

Defendants cite no relevant case authorities in support of this legal proposition, but rely on the following language which appears in 32 Am. Jur., Sec. 691, p. 568:

"The landlord owes a duty to persons lawfully visiting the tenant upon business to exercise reasonable care to keep the premises safe. . . . The duty of a landlord to have property under his control, such as common passageways, reasonably safe extends also to all those who have *lawful occasion* to visit the tenant for social purposes." (Emphasis ours.)

Similar language appears in numerous Illinois cases. In Murphy v. Illinois State Trust Co., 375 Ill. 310, it was said that the landlord is liable "for an injury which results to persons, *lawfully in such place.* . . . " In Hart v. Sullivan, 324 Ill. App. 243, the court said that the landlord's duty extends "to those who have *lawful occasion* to visit the tenant for social purposes." The phrase "third parties who are *lawfully within the building*" appears in Kopta v. Greer Shop Training, Inc., 327 Ill. App. 470. In none of these cases, however, was the purpose or motive of the guest in issue. We have not been able to find any Illinois case that construes the meaning of the term "lawfully" as it appears in these various statements of the landlord's liability to third persons injured on premises under the landlord's control or used in common by the tenants.

The word "lawfully" as used in the context of these cases, is subject to two reasonable definitions. One is narrow and one is broad. It could refer only to

the legal status of the injured person in relation to the tenant. Under this definition the landlord's duty of reasonable care would extend to business invitees and social invitees and licensees of the tenant, but not to technical or aggressive trespassers. The term unquestionably extends this far, and it is well settled that the landlord's only duty to trespassers is to refrain from willful and wanton misconduct. Brownstein v. Electric Household Utilities Corp., 326 Ill. App. 466. The interpretation of the law urged by defendants, however, is that the term "lawfully" implies a broader limitation on the duty and liability of the landlord; that it refers to the motive and purpose of the injured person's presence on the premises, as well as to his legal relationship with the tenant; and that if that motive or purpose is unlawful, the landlord's ordinary duty of care ceases to exist. Whether or not this latter theory is a proper view of the law is the question we must decide.

The responsibility and liability of an innkeeper to an invitee of a guest would not be different from that of a landlord to an invitee of a tenant under the issue involved in this case as to preclude analogy. The authorities appear to be divided as to the effect of the unlawful motive or conduct of the invitee of a guest on the innkeeper's duty of care. In Jones v. Bland, 182 N. C. 70, 108 S. E. 344, it was held that an innkeeper owes no duty to a person going to the room of a guest, upon the latter's invitation, for the purpose of gambling, except not willfully or intentionally to injure him. The court's theory appears to have been that the innkeeper's duty does not extend to wrongdoers who come upon the premises for an unlawful purpose, and that even though invited by a guest of the inn, such person has the status of a trespasser in his relation with the innkeeper.

The Supreme Court of Mississippi took an altogether different approach in the case of Meador v. Hotel

433

Grover, 193 Miss. 392, 9 So.2d 782. There the plaintiff's decedent, on his way to visit a prostitute in the defendant hotel, met his death through the negligence of the hotel elevator operator. The court treated this case as one where a person enters an inn for the purpose of visiting a guest therein, and held that the illegal purpose of the decedent did not release the hotel from its duty of care. The court's theory is found on p. 785 of the opinion:

"For a plaintiff to be barred of an action for negligent injury under the principle of public policy implicit in the maxim ex dolo malo non oritur actio, his injury must have been suffered while and as a proximate result of committing an illegal act. The unlawful act must be at once the source of both his criminal responsibility and his civil right. The injury must be traceable to his own breach of the law and such breach must be an integral and essential part of his case. Where the violation of law is merely a condition and not a contributing cause of the injury, a recovery may be permitted. . . . Regardless of the propriety for a private or public condemnation of one for a moral delinquency, matters which affect his personal character or reputation are no concern of the courts in their examination of his rights as a litigant."

Our Supreme Court has clearly indicated its approval of this latter theory as applied to general negligence cases. Bonnier v. Chicago, B. & Q. R. Co., 2 Ill.2d 606; Lerette v. Director General of Railroads, 306 Ill. 348. Should it be extended to apply to negligence cases involving a landlord and an invited guest of his tenant?

██ ██ The physical presence of the plaintiff on defendants' premises was not, in itself, unlawful. He was there because of the express invitation of the tenant. He was not a trespasser. While there he violated a statute. His misconduct, however, cannot be said to have altered his status as a guest of the tenant, because it occurred at the invitation and request of the tenant.

434

As a guest, the plaintiff continued to be lawfully present on the premises. It is clear that a landlord may be liable to one who, though a stranger to the landlord, is injured by a defective common passageway or stairway. Such liability is dependent upon the relationship of the injured party to the tenants of the landlord. Elbers v. Standard Oil Co., 331 Ill. App. 207. One who is an invitee of a tenant is an implied invitee of the landlord. Fisher v. Jansen, 30 Ill. App. 91. If the conduct of the third party fails to destroy his status as an invitee of the tenant, we see no sound reason for holding that, as a matter of law, it destroys the implied invitation of the landlord.

■ Where the unlawful conduct of the injured party is the proximate cause of his injury, then, it will unquestionably bar his right of recovery, having the same effect as contributory negligence. Newton. v. Illinois Oil Co., 316 Ill. 416; Belmont Garage Corp. v. J. W. Petersen Coal Co., 328 Ill. App. 575. This was not the fact in the instant case. The plaintiff was injured at a time when he had excused himself from the card game, and was on his way to perform a natural and lawful act. The fact that the plaintiff may not have been at the place of accident had it not been for his unlawful motive, is not in itself sufficient to make his unlawful conduct the proximate cause of his injuries. Lerette v. Director General of Railroads, supra.

■ We conclude that the plaintiff was lawfully present on the defendants' premises, and that his unlawful conduct thereon, being unrelated to the manner in which he received his injuries, was an insufficient basis to deprive him of his civil rights against a negligent defendant.

■ The next question for our determination is whether or not plaintiff was guilty of contributory negligence as a matter of law. The cases cited by defendants on this point are all distinguishable because they either contain certain factual elements not present

435

in the instant case, or fail to contain certain circumstances that did exist in this case. The plaintiff was told, by one familiar with the premises, that the toilet was at the end of the hall. He proceeded to a door that was at a right angle to the corridor in which he was traveling. There was nothing to indicate the danger that was lurking behind this door. The door opened to darkness. Plaintiff, however, did not blindly advance. He attempted to discover the light switch, and did so from what might be considered a reasonably safe position. His first step was across the threshold and a portion of the floor which he could see dimly. On his second step he fell.

The facts in Coken v. Peterson, 340 Ill. App. 518, were very similar to those in the instant case. There, on pp. 522–3, the court said:

"Plaintiff in the instant case, finding herself in darkness, did not go forward in search of the washroom but reached up and about for a light cord, stepped backwards and fell down the stairs. We think it was for the jury to determine. . ."

We, too, feel that it was for the jury to determine whether or not plaintiff exercised due care for his own protection and safety. This is not a situation where it can confidently be said that reasonable minds could not differ.

For the reasons herein stated the judgment is reversed and the cause remanded for new trial.

Judgment reversed and cause remanded with directions.

McCORMICK, P. J. and SCHWARTZ, J., concur.