ROBERT H. KAROW, Plaintiff-Appellant, *v.* STUDENT INNS, INC., *et al.*, Defendants-Appellees.

Fourth District   No. 13353

Opinion filed November 18, 1976.—Rehearing denied December 22, 1976.

CRAVEN, J., dissenting.

James M. Langan, of Champaign, for appellant.

T. Gaillard Knappenberger, Jr., of Champaign, for appellees.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Plaintiff Robert Karow brought an action for false arrest and imprisonment against defendants. Judgment was entered upon a jury verdict returned in favor of defendants. Plaintiff appeals, contending, among other things, that a judgment *n.o.v.* should have been entered in his favor on the question of liability or, in the alternative, that errors in the instructions require a new trial. We affirm.

A brief review of the relevant evidence is necessary. Illini Towers is a student apartment building in Champaign County, Illinois, which is operated by Student Inns, Inc. Thomas Difanis was employed by Student Inns during the relevant times as a head resident. Students Inns, Inc., and Difanis are the defendants.

Martin Munvez testified that he was a lessee of one of the apartments in Illini Towers on May 14, 1971. On that date, Munvez invited the plaintiff to visit him, which plaintiff did.

Thomas Difanis, called as a witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60), testified that he saw Karow in Munvez's apartment on May 14, 1971, and asked that plaintiff leave. Karow refused. Difanis then called the City of Champaign police and requested their assistance in removing a man from the building. Munvez and Karow denied Difanis had come to the apartment prior to the arrival of the police.

Difanis, testifying in his own behalf, stated that he saw Karow in a lounge area of the building around 5:30 p.m., on May 14, and at that time requested that Karow leave. Difanis next saw Karow at the time the Champaign police removed him from the building. Difanis acknowledged that this testimony was inconsistent with his prior

testimony and with a deposition he had given, both of which were to the effect that the request to leave had occurred in Munvez's apartment.

A City of Champaign police officer, John Schweighart, testified that he and his partner went to Illini Towers on May 14, 1971, and were escorted to Munvez's apartment by Difanis. Asked if Difanis had requested him to arrest Karow, the officer testified that he had. Later, the officer testified that he could be wrong about that but that otherwise he would have had no reason to arrest plaintiff. Difanis denied that he asked the officers to arrest plaintiff. The officers decided to charge Karow with disorderly conduct. Plaintiff was taken to the City of Champaign police station where he was put through the procedure normal upon arrest (fingerprints taken, etc.). He was subsequently taken to the county jail and then released on bond. The disorderly conduct charge was later dismissed at the request of the State's Attorney. Defendants concede that Karow was not disorderly.

■■ Plaintiff, on appeal, contends that the court erred in not granting plaintiff's post-trial motion for a judgment in his favor on the issue of liability. The standard to be applied is therefore the familiar *Pedrick* standard, that is, whether the evidence, viewed most favorably to the opponent so overwhelmingly favors the movant that no contrary verdict could stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

The action brought is for false arrest and imprisonment. Plaintiff has the burden of proving a restraint or arrest, caused or procured by defendants without their having reasonable grounds to believe an offense is being committed by plaintiff. False imprisonment consists of the unlawful restraint, against his will, of an individual's personal liberty or freedom of locomotion. *Shelton v. Barry* (1946), 328 Ill. App. 497, 66 N.E.2d 697.

■■■ Plaintiff argues that defendant Difanis caused or procured his arrest and imprisonment as a matter of law. An arrest by an officer caused or procured by a private person is the same as an arrest by the private person. (*Aldridge v. Fox* (1952), 348 Ill. App. 96, 108 N.E.2d 139; *Green v. No. 35 Check Exchange, Inc.* (1966), 77 Ill. App. 2d 25, 222 N.E.2d 133.) However, the mere act of giving information to the police is insufficient in itself to constitute participation in an arrest. *Odorizzi v. A. O. Smith Corp.* (7th Cir. 1971), 452 F. 2d 229.

In *Green v. No. 35 Check Exchange, Inc.*, plaintiff had been arrested after an employee of defendant pointed out plaintiff to the police as a person who had committed a forgery. The officer who arrested plaintiff testified that he relied solely on what the employee told him in making the arrest. The appellate court held that, under those circumstances, defendant through its employee procured plaintiff's arrest as a matter of law.

■■ In the case at bar, Difanis testified that he had not requested the

police to arrest Karow but merely requested their assistance in removing him from the building. Even accepting this testimony, which was contradicted to a degree by the officer, defendants caused the restraint of plaintiff since Difanis procured Karow's unwilling removal from the building. When a person is impelled to go where he does not wish to go, the imprisonment or restraint element has been established. *McKendree v. Christy* (1961), 29 Ill. App. 2d 195, 172 N.E.2d 380.

The next question is whether the restraint was lawful. In Illinois, the rule had always been that a private person was liable for false imprisonment if it could not be proved that a crime was in fact committed and plaintiff was guilty of the crime. (*Lindquist v. Friedman's, Inc.* (1937), 366 Ill. 232, 8 N.E.2d 625; *Green v. No. 35 Check Exchange, Inc.*) A citizen could not make an arrest based upon probable cause to believe an offense was being committed. This was the logical result under the statutory provision authorizing arrests, which stated:

> "An arrest may be made by an officer or by a private person without a warrant, for a criminal offense committed or attempted in his presence, and by an officer, when a criminal offense has in fact been committed and he has reasonable grounds for believing that the person to be arrested has committed it." Hurd's Stat. 1903, par. 342, p. 67.

However that statute was changed in 1964, and has stated since then:

> "Any person may arrest another when he has reasonable grounds to believe that an offense other than an ordinance violation is being committed." Ill. Rev. Stat. 1971, ch. 38, par. 107—3.

No cases have interpreted this new statutory language. The Committee Comments to section 107—3 state that the section continues the former law as to arrests by private persons except in regard to ordinance violations. A comparison of the old and the new sections clearly reveals a change. The former section prohibited arrests except when an offense was being committed while the present section, by its very language, permits a private person to arrest when he has reasonable grounds to believe an offense is being committed. An arrest authorized by statute cannot be grounds for civil liability.

Defendants acknowledge that there were no grounds to believe that plaintiff was guilty of disorderly conduct, which was the charge made in the complaint signed by a police officer at the police station. However, defendants argue that they had reasonable grounds to believe plaintiff was committing criminal trespass. The statute defines criminal trespass, in part, as:

> "(a) Whoever enters upon the land or any part thereof of another, after receiving, immediately prior to such entry, notice from the owner or occupant that such entry is forbidden, or remains upon

the land of another after receiving notice from the owner or occupant to depart, shall be fined not to exceed $100 or imprisoned in a penal institution other than the penitentiary not to exceed 10 days.

(b) A person has received notice from the owner or occupant within the meaning of Subsection (a) if he has been notified personally, either orally or in writing, or if a printed or written notice forbidding such entry has been conspicuously posted or exhibited at the main entrance to such land or the forbidden part thereof." Ill. Rev. Stat. 1971, ch. 38, par. 21—3(a)(b).

After the incident invoved here the legislature passed an amendment to the statute as follows:

"(c) This Section does not apply to any person, whether a migrant worker or otherwise, living on the land with permission of the owner or of his agent having apparent authority to hire workers on such land and assign them living quarters or a place of accommodations for living thereon, nor to anyone living on such land at the request of, or by occupancy, leasing or other agreement or arrangement with the owner or his agent, nor to anyone invited by such migrant worker or other person so living on such land to visit him at the place he is so living upon the land." Ill. Rev. Stat. 1973, ch. 38, par. 21—3(c).

■■ In civil law, a person on the leased premises at the express invitation of the tenant is not a trespasser. (*Shiromo v. Itano* (1956), 10 Ill. App. 2d 428, 135 N.E.2d 123.) Although there is no authority directly on this issue, there is no reason to believe that the criminal and civil law differed on this point. Accordingly, plaintiff, as a matter of law, could not have been found guilty of criminal trespass since he was present on the property at the express request of a lawful tenant. Ignorance of the law does not constitute a legal excuse for an unlawful restraint. (*Campbell v. Kaczmarek* (1976), 39 Ill. App. 3d 465, 350 N.E.2d 97.) Similarly, that defendants may have been under a misapprehension of the law, so that they believed an invitee of a lessee could be guilty of trespass, cannot be a defense.

■■ Defendant's mistaken opinion as to the interpretation of the criminal trespass statute cannot fulfill the requirement of section 107—3 of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 107—3) that there be reasonable grounds to believe an offense was being committed. (See *Sundmacher v. Block* (1891), 39 Ill. App. 553, where it was held that ignorance or mistake of the law is no defense to a malicious prosecution action where probable cause to arrest is a defense.) As a matter of law, therefore, defendants had no reasonable grounds to believe plaintiff was committing an offense which would justify the

removal of plaintiff from the building and arrest as a trespasser.

The question remaining is whether there was sufficient evidence of defendants' affirmative defense of advice of counsel. Plaintiff does not contend that advice of counsel, properly proven, is not a defense in a false arrest and imprisonment case. (*Galarza v. Sprague* (1936), 284 Ill. App. 254, 1 N.E.2d 275; *Wright v. Young* (1970), 128 Ill. App. 2d 100, 262 N.E.2d 769.) When the defense is relied on, it is necessary that defendants show they had submitted all material facts fairly and fully and in good faith to an attorney, and that they relied on that advice in their subsequent actions. (*Galarza.*) The defendants must show what information was given to counsel so that the jury may determine whether it was a full, truthful and correct disclosure. In the case at bar, both Difanis and Gregory Goodman, resident manager of Illini Towers, testified only that they had made a full disclosure of Karow's activities and interactions with defendants to the State's Attorney and that Difanis had acted upon the advice given. Due to the objections interposed by plaintiff they were not permitted to relate to the jury the substance of this disclosure. This was error. (*Morrow v. Carnes* (1903), 108 Ill. App. 621.) Plaintiff cannot complain in this court that there was no evidence of the facts disclosed or advice given when that circumstance was brought about by his own action. *Brichacek v. Hampton* (1964), 54 Ill. App. 2d 284, 203 N.E.2d 737.

■■ Plaintiff also argues that the defense is not applicable in this case since the testimony of Difanis and Gregory Goodman, general manager of Illini Towers, show advice was sought prior to May 14, 1971, and therefore prior to the facts giving rise to the arrest. Plaintiff argues that the facts could not have been fully disclosed since the incident had not occurred. No case in Illinois touches this issue. It is logical, however, that the defense be applicable in a situation such as presented here where similar incidents involving this plaintiff had occurred prior to the incident in issue. Where the material circumstances revealed to counsel are substantially identical to those circumstances under which defendants procure an arrest, no purpose is served by requiring defendants to seek advice yet another time.

■■ Accordingly, since the defense was applicable and a question for the jury, the court properly denied plaintiff's motion for a judgment *n.o.v.*

Plaintiff's second contention on appeal is that the instructions given on the defense of advice of counsel were so inconsistent as to confuse the jury. Defendant's Instruction Number 8 states:

"Where one consults in good faith with the State's Attorney and submits to him a full, fair and true statement of all the facts and obtains his advice with reference to a person who is supposed to have committed some offense and the party in good faith acts upon

the advice given by the State's Attorney and institutes proceedings of a criminal nature against the person and he is arrested, these facts, if established by a preponderance of the evidence, will constitute a defense to an action for false arrest although the person charged is not in fact guilty."

The portion of the Court's Instruction which deals with the defense is as follows:

"Defendants have asserted the defense that the Defendant, Student Inns, Inc., by and through its authorized agent and Defendant Thomas Difanis, submitted all facts known to them concerning Robert H. Karow and his activities to the State's Attorney of Champaign County prior to May 14, 1971 and acted upon advice received from the State's Attorney, and that such action constitutes a defense to the action of Plaintiff, Robert H. Karow."

■■■ Plaintiff argues that the court's instruction does not contain the requirement that there be a "full, fair and true statement" of the facts. However, it does state that the defendants have asserted that they submitted all facts. The two instructions, as given, are not contradictory but complementary. Plaintiff also complains that the instructions are contradictory in respect to when the defendants must have consulted with an attorney. Since the evidence was unequivocal that consultation with the State's Attorney occurred prior to May 14, 1971, we do not believe that the instructions were contradictory or tended to confuse the jury. Plaintiff contends that the Court's Instruction Number 1 was an erroneous statement of plaintiff's burden of proof.

The instruction stated:

"The Plaintiff has the burden of proving each of the following propositions:

First, that the Defendants acted in the way claimed by the Plaintiff, as stated to you in these instructions and that the Defendant, Student Inns, Inc., by and through its agent, the Defendant, Thomas Difanis, acting within the course and scope of his employment, accused the Plaintiff, in the presence of one or more police officers, of committing one or more misdemeanors, and the police officers, by reason of the charges preferred by the Defendant, through its agent, and at the request of the Defendant, through its agent, arrested and seized the Plaintiff and deprived him of his liberty;

Second, that thereafter all charges against the Plaintiff were dismissed;

Third, that the acts of the Defendants were a proximate cause of the damage to the Plaintiff.

Plaintiff's Instruction Number 10, an issues instruction, was given. His Instruction Number 11 was refused.

Number 10 is as follows:

"Plaintiff claims that he was falsely arrested and imprisoned and that defendants caused or procured his arrest.

Plaintiff further claims that he was then and there innocent of any crime.

Plaintiff further claims that he sustained damages as a proximate result of his false arrest and imprisonment.

Defendants deny that plaintiff was falsely arrested and imprisoned. Deny that defendants caused or procured the arrest of plaintiff, and deny that plaintiff was then and there innocent of any crime.

Defendants further deny that plaintiff sustained damages."

Instruction Number 11 stated:

"If you find from the evidence in the case that Student Inns, Inc., by and through its agent, Thomas Difanis, caused or procured the arrest of plaintiff and if you further find that plaintiff was not guilty of the commission of a crime in the presence of Thomas Difanis, then your verdict should be for the plaintiff.

If, on the other hand, you find from your consideration of all the evidence that either of these propositions has not been proved, then your verdict should be for the defendants."

■■ When plaintiff's instructions are compared with the court's, it is apparent that both state the same propositions, although in different ways. The court's instruction in fact lessens plaintiff's burden of proof since the evidence was uncontradicted that all charges against the plaintiff were dismissed.

Plaintiff's final argument is that prejudicial evidence was erroneously admitted. Prior to trial, plaintiff presented a motion in limine to exclude testimony concerning plaintiff's conduct prior to May 14, 1971. The motion was granted. However, during trial, the court permitted some evidence of events prior to the arrest to be introduced.

■■ It is true, as plaintiff argues, that such testimony was irrelevant to the issue of whether defendants had caused a false arrest. (*Raucci v. Connelly* (1950), 340 Ill. App. 280, 91 N.E.2d 735.) However, evidence of prior events was proper since plaintiff had requested punitive damages based on malice. Freedom from malice is demonstrated by offering proof of circumstances which tend to establish probable cause for the arrest (*Aldridge v. Fox* (1952), 348 Ill. App. 96, 108 N.E.2d 139) and facts and circumstances tending to show defendants acted in good faith. *Harris v. Schlink* (1916), 200 Ill. App. 202.

In *Harris*, defendant had plaintiff, a 14-year-old girl, arrested after a group of children had broken some glass in his place of business. The

evidence showed that the child was not involved in the incident and the jury returned a verdict for the child for false imprisonment. The appellate court reversed because the trial court had excluded evidence that defendant had been bothered by children before, he had complained to the police and told by them to catch the children and send them to the station. The appellate court held that defendant was entitled to prove any facts and circumstances that showed he was acting in good faith.

■■ Plaintiff complains of testimony by Difanis that he considered Karow a potential threat to the safety of the students who lived in the building. Difanis testified that his opinion was based upon his dealings with Karow, seeing Karow carrying a baseball bat around the building and the recovery of a cardboard cylinder of the type used in detonating explosives from Karow's room. This testimony was properly admissible upon the issue of defendants' good faith in seeking to remove plaintiff from their building.

Plaintiff was cross-examined as to why he ended his residence at Illini Tower and a statement made by him at the time of his removal was admitted into evidence. Again, this evidence was relevant on the punitive damages issue in view of defendants' position that their action was taken in good faith and not with malice.

■■ Defendants' Exhibit Number 8 was a statement made by Difanis at the police station after plaintiff's arrest. It was admitted into evidence as a prior consistent statement in support of Difanis' testimony that Karow had been asked to leave earlier in the day on May 14, 1971. Prior statements consistent with in-court testimony are not admissible. (*Kenilworth Insurance Co. v. McDougal* (1974), 20 Ill. App. 3d 615, 313 N.E.2d 673.) Defendants' Exhibit Number 9, which was a Champaign Police Department radio log for May 14, 1971, was apparently admitted for the same reason. These documents, although erroneously admitted, were not so prejudicial as to require a new trial. *Kenilworth Insurance Co. v. McDougal.*

Accordingly, for the reasons expressed above, the judgment of the circuit court of Champaign County is affirmed.

Judgment affirmed.

TRAPP, P. J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

I dissent for two reasons. First, in order to rely upon and avail themselves of the affirmative defense of advice of counsel, it was incumbent upon the defendants to show what information they gave counsel and that the information was a full, truthful and correct statement

888

of facts as they then existed. (*Froemke v. Massman* (1919), 215 Ill. App. 86, 89.) This record does not satisfy that requirement. There are no specifics as to what Mr. Difanis or Mr. Goodman told the lawyer and indeed there is no showing whatsoever that their discussion with the lawyer related to the facts disclosed by the subsequent incident.

Second, the admitted testimony about finding a cardboard cylinder in plaintiff's room like those used in detonating explosive devices was so highly inflammatory and prejudicial that it denied the plaintiff a fair trial. The trial court had granted plaintiff's motion in limine ruling that evidence of prior misconduct was not to be mentioned. The reference to explosives violated this ruling and in my opinion denied the plaintiff a fair trial. The majority opinion citation and reliance upon *Aldridge* and *Harris* is lacking in persuasion.