Lawrence BUTLER, Cecil Davis, Ron Jackson, Charles James, Monroe Jenkins, Ernest Lewis, James Nash, and Estate of Nathan Nash, Deceased, Plaintiffs-Appellees,

v.

GOLDBLATT BROS., INC., Thomas Marsh, Dennis McFarland, Andre Walker, Wayne Young, and Elmer Gerl, John Kowalski, John Juriss, Frank Krause, and John McDonald, Defendants-Appellants.

Nos. 77–2043, 77–2044, 77–2074 and 77–2149.

United States Court of Appeals, Seventh Circuit.

Argued May 30, 1978.

Decided Dec. 29, 1978.

Rehearings and Rehearing En Banc Denied March 26, 1979.

See also, D.C., 432 F.Supp. 1122.

A. Bradley Eben, Richard F. Friedman, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellants.

John C. Hendrickson, H. Ayers Moore, Chicago, Ill., for plaintiffs-appellees.

Before PELL and BAUER, Circuit Judges, and HARPER, Senior District Judge.*

BAUER, Circuit Judge.

This appeal involves a civil rights claim under 42 U.S.C. § 1983 and a pendent state law claim for false arrest and imprisonment. The action was brought by two groups of plaintiffs: (1) six employees of Goldblatt Brothers, Inc., namely, Lawrence Butler, Cecil Davis, Ron Jackson, Charles James, Monroe Jenkins, James Nash and Nathan Nash[1] [hereinafter six Goldblatt employees]; and (2) Earnest Lewis, a friend of the six employees. The named defendants in the action also consisted of two groups: (1) four Chicago policemen, namely, John McDonald, John Juriss, John Kowalski and Frank Krause [hereinafter police appellants]; and (2) Goldblatt Brothers, Inc., together with four members of its security department, namely, Wayne Young, Thomas Marsh, Andre Walker and Dennis McFarland [hereinafter Goldblatt's].

The major issues on appeal arise from a series of events that began when Wayne Young, an "undercover" agent for the Goldblatt security department, reported that the plaintiffs-appellees were plotting to murder a Goldblatt security officer named Andre Walker. As described by Young, the plot called for Walker to be killed on the day he was scheduled to testify against Jessie Green, a former Goldblatt employee who had been fired for allegedly stealing goods that belonged to the store.

Upon receiving Young's report, Walker and the director of Goldblatt security, Thomas Marsh, contacted the police appellants and informed them of Young's allegations. Although Marsh and Walker did not disclose either Young's identity or the names of the alleged conspirators, the law enforcement officers arranged for Walker to receive police protection on the day of his scheduled court appearance.

On that date, Walker was accompanied by a team of police officers to a Chicago criminal court, where he testified against Green. Immediately thereafter, Walker informed the officers that he had been threatened by Lewis in the courtroom. Specifically, Walker charged that Lewis had grabbed him by the arm and warned, "Well, that's it for you." Although the alleged threat was not witnessed by any of the policemen, Commander McDonald ordered the arrests of Lewis and the six Goldblatt employees. The seven men were then detained for periods ranging from three to fifteen hours, only to be released when Mc-

---

* The Hon. Roy W. Harper, United States District Court for the Eastern and Western Districts of Missouri, is sitting by designation.

1. Nathan Nash died shortly after the law suit was filed, and his estate was substituted in the proceedings. The defendants-appellants now argue that Nash's claim for false arrest and imprisonment abated with his death. However, we agree with the district court that false arrest and imprisonment involves a direct physical restraint on the person, and thus survives under Illinois law as an action "to recover damages for an injury to the person." Ill.Rev. Stat.1975, Ch. 3, § 339. See *Beard v. Robinson*, 563 F.2d 331 (7th Cir. 1977).

Donald determined that the evidence was insufficient to charge them.

In the subsequent action for damages brought by Lewis and the six employees, the plaintiffs' amended complaint asserted two grounds for recovery: (1) a claim under 42 U.S.C. § 1983 for the allegedly unconstitutional arrests (Count I); and (2) a claim under Illinois common law for false arrest and imprisonment (Count III). As to the six employees, the trial judge directed a verdict against police officers McDonald and Juriss on both counts, while the jury returned a verdict against Goldblatt's on the state law claim alone. In addition, the trial judge granted Butler and Jenkins judgment notwithstanding the verdict on both counts against Officers Krause and Kowalski. As to the plaintiff Lewis, the jury returned a verdict against Goldblatt's on the § 1983 claim, but found no liability on the part of the policemen under either count.

 To resolve the issues presented on appeal, we must examine the various findings of liability against the defendants-appellants. To this end, we may begin with the state and federal claims against the police appellants arising from the arrests of the six Goldblatt employees. Since the arrests were made without warrants, their validity under both Illinois common law [2] and the United States Constitution depends on whether, at the moment they were made,

> "the officers had probable cause to make [them]—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [Goldblatt employees] had committed or [were] committing an offense."

**2.** It seems clear that under Illinois common law an action for false arrest and imprisonment will lie if the arrest is made without probable cause. See *Middleton v. The Kroger Co.*, 38 Ill.App.3d 295, 347 N.E.2d 27 (1976); *Odorizzi v. A. O. Smith Corporation*, 452 F.2d 229, 231 (7th Cir. 1971). The Illinois courts have held that probable cause exists when

> "the facts and circumstances within the arresting officer's knowledge and of which he

*Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). On the facts of this case, such a determination of probable cause must hinge on the weight to be given the information that was supplied by the informant Young. Accordingly, we must examine the "underlying circumstances from which the officers concluded that *the informant was 'credible' or his information 'reliable.'*" *McCray v. Illinois*, 386 U.S. 300, 304, 87 S.Ct. 1056, 1059, 18 L.Ed.2d 62 (1967) (emphasis supplied); *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

As to the credibility of the informant, it is quite apparent that the police officers had no reasonable basis for believing Young to be a reliable informant. The record discloses that the police appellants did not have any prior experience with Young, and indeed did not even know that he was the individual who was supplying the information.

By the same token, it is equally apparent that the officers did not have reasonable grounds for believing the information to be reliable, since they did not undertake an independent investigation to corroborate the details of the accusations. See *Spinelli v. United States*, 393 U.S. 410, 413, 417, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). On this point, the police appellants argue that the substance of the allegations was corroborated by the threatening remarks that Lewis allegedly made to Walker in the courtroom. But this argument ignores a crucial point, namely, that the alleged confrontation between Lewis and Walker was not witnessed by any of the law enforcement officers. In-

had reasonable and trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in believing that an offense had been committed, and that the person arrested is guilty." *People v. Peak*, 29 Ill.2d 343, 348, 194 N.E.2d 322, 325; *People v. Mills*, 98 Ill.App.2d 248, 254, 240 N.E.2d 302 (1968).

deed, the police appellants had *no first hand knowledge of any facts* to support a belief that the six Goldblatt employees were engaged in criminal activity at the time they arrested them. Accordingly, we have no difficulty in concluding that a reasonable man could not find that the arrests were based on probable cause.

By the same reasoning, we must also conclude that the so-called "good faith" defense under 42 U.S.C. § 1983 is not available to the police officers in this case. In *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Supreme Court held that if police officers "reasonably believed in good faith that the arrest was constitutional, then a verdict for the officers would follow even though the arrest was in fact unconstitutional." *Id.* at 557, 87 S.Ct. at 1219. Thus, the crucial question is whether the law enforcement officers "acted in good faith with a reasonable belief in the constitutionality of their conduct," *Brubaker v. King*, 505 F.2d 534, 537 (7th Cir. 1974); and, as noted above, we find no basis for a "reasonable belief" that the warrantless arrests of the six employees were based on probable cause and hence constitutional. It is our conclusion, therefore, that the directed verdict against Commander McDonald and Sergeant Juriss, and the judgment notwithstanding the verdict against Officers Krause and Kowalski must be affirmed.

■■ We turn now to the question of Goldblatt's liability to the six employees under the state law claim of false arrest and imprisonment. It is well settled in Illinois that "giving information to police in itself is insufficient to constitute participation in an arrest." *Odorizzi v. A. O. Smith Corporation*, 452 F.2d 229 (1971). Thus, in *Morris v. Faulkner*, 46 Ill.App.3d 625, 5 Ill.Dec. 112, 361 N.E.2d 112 (1977), the court declared that a private party who furnishes inaccurate information to law enforcement officers could not be held liable for false arrest on that ground alone:

"The complaint merely alleges that [the defendants] called Sheriff Faulkner and made 'false accusations' that plaintiffs

would cause trouble. Thus, at most, liability of [the defendants] could only be based upon having conveyed information of an erroneous opinion to the proper authority. With this information, Faulkner was free to take whatever action, if any, he chose. Therefore his acts, whether lawful or unlawful, could not give rise to liability for [the defendants] *since they had not directed or procured those acts.*" *Id.* at 629, 5 Ill.Dec. at 115, 361 N.E.2d at 115 (emphasis supplied). Similarly, in *Middleton v. The Kroger Co.*, 38 Ill.App.3d 295, 347 N.E.2d 27 (1976), the court found no liability for false arrest and imprisonment where the defendants "did not at any time sign a complaint against the plaintiff, did not request the police officer to arrest the plaintiff, and did not detain the plaintiff." *Id.* at 298, 347 N.E.2d at 29.

■ In the case at hand, the jury returned a verdict against Goldblatt's on the six employees' state law claim of false arrest. The record discloses, however, that Goldblatt's did not in any way detain the employees, nor did it sign a complaint against them or direct the officers to arrest them. Rather, the evidence suggests that Goldblatt's did nothing more than give information to the police, who were then free to decide for themselves whether or not the employees should be arrested. It is our view that this evidence is not sufficient under Illinois law to support a verdict of liability against Goldblatt's, and, for this reason, we must set aside the judgment of the jury on the state law claim of false arrest and imprisonment.

■ These same considerations also compel the conclusion that Goldblatt's "participation" in the arrest of Lewis is not actionable under 42 U.S.C. § 1983. The Supreme Court has made it clear that two elements are necessary for recovery of damages under § 1983:

"First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States. Second, the plaintiff must show that the defendant deprived him of this Constitutional right 'under

color of any statute, ordinance, regulation, custom or usage, of any State or Territory.' This second element requires that the plaintiff show that the defendant acted 'under color of law.' "

*Adickes v. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). Furthermore, in construing the "under color of law" requirement, the Court has held that

> "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents."

*United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966).

In applying these principles to the instant case, we are again unable to find in the record any significant evidence to suggest that Goldblatt's did anything more than supply information to police officers who then acted on their own initiative in arresting Lewis; and we decline to hold that the mere act of furnishing information to law enforcement officers constitutes "joint [activity] with state officials in the *prohibited action*" (that is, the allegedly unconstitutional arrest of Lewis). Accordingly, we must also set aside the jury's verdict against Goldblatt's on Lewis' claim for relief under § 1983.

■ We note, finally, that the district court considered the nature of the verdicts in determining the award of attorneys' fees under 42 U.S.C. § 1988, and it specified that $15,000 of the $25,000 award was to be paid by Goldblatt's. We must therefore remand the case for a redetermination of attorneys' fees consistent with the views expressed in this opinion.

We have examined the appellants' other arguments and find them to be without merit. Accordingly, the judgment of the district court is

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.